**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STAR BRADFORD, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-05-0624-HE |
| ) | |
| THE UNIVERSITY OF OKLAHOMA ) | |
| HEALTH SCIENCES CENTER, ET AL., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff Star Bradford filed this action against her former employer, the University of Oklahoma Health Sciences Center ("University"), and several University employees, alleging discriminatory discharge claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C.§ 1983, an intentional infliction of emotional distress claim under the Oklahoma Governmental Tort Claims Act ("GTCA") and a public policy tort claim.[1] With the exception of defendant Francene Weatherby, the plaintiff's supervisor, the individual defendants[2] were sued only in their official capacities.

The defendants have filed a motion for summary judgment, which may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence and any

---

[1]*The plaintiff contends she was wrongfully terminated in violation of Oklahoma public policy reflected in the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. §§ 1101-1901.*

[2]*The other individuals sued are David Boren, University President, Jenny Jensen, a University equal employment officer, and Patricia Forni, Dorothy Light and Patricia Matney, three of the plaintiff's coworkers.*

reasonable inferences that might be drawn from it are viewed in the light most favorable to the nonmoving party. Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Having applied the Rule 56 standard to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation and citation omitted), the court concludes the defendants' motion should be granted. The rationale for the court's decision follows a statement of the pertinent facts.

Beginning July 2, 2002, the plaintiff was employed as a student recruiting counselor for the University's College of Nursing. Although the defendants had some concerns about the plaintiff's job performance,[3] she apparently was not informed of their dissatisfaction until late April, 2003.[4] Weatherby sent her a memo dated May 28, 2003, specifying several areas of her performance that needed improvement. The memo stated it was a follow-up to a prior meeting on April 21, 2003, and that Weatherby would meet weekly with the plaintiff to discuss her progress on the identified areas of concern. It concluded with: "You must make significant, weekly progress in your job performance if you are to remain employed as a

---

[3]*See defendants' reply, Exhibit 3.*

[4]*Included among the defendants' exhibits is one email dated December 2, 2002, that Weatherby sent the plaintiff advising her of an error she had made. Defendants' reply, Exhibit 3. The record before the court does not include, however, any performance evaluations or other memos sent to the plaintiff concerning her job performance that predate May, 2003.*

student recruiter/counselor in the College of Nursing." Defendant's motion for summary judgment, Exhibit 1. On June 17, 2003 Weatherby sent the plaintiff another memorandum discussing a report she had prepared that Weatherby found to be unsatisfactory. *Id.,* Exhibit 2. About a week later Weatherby gave the plaintiff a thirty day written notice of termination. The notice stated that the plaintiff had not made any progress in the problem areas they had previously discussed and that, although she had had almost a year to learn the job, her performance to date did not meet the requirements for the position. *Id.* Exhibit 3. The plaintiff was discharged for providing inaccurate information to prospective students, being unfamiliar with all nursing programs and program tracks at the college, failing to master transcript evaluation and program planning for all career tracks, taking excessive lunch breaks, and other disapproved conduct.[5]

The plaintiff then filed a discrimination complaint with the University. After completing its grievance process and exhausting her administrative remedies with the Equal Employment Opportunity Commission without obtaining relief, she filed this lawsuit, seeking compensatory and punitive damages, plus equitable relief in the form of

---

[5]*The defendants' statement of undisputed material facts is brief. It includes the plaintiff's job title, the date she started work, and the work-related deficiencies listed in ¶22 of the plaintiff's First Amended Complaint as the reason for her discharge. First Amended Complaint, ¶22 ("On June 26, 2003, Bradford was discharged for the following ...."). The plaintiff fails to comply with the local court rule pertaining to summary judgments. See LCvR56.1(c). She concedes the defendant's description of her position, but then states, in wholly conclusory fashion and without reference to the record, "the lynchpin issue is whether Plaintiff was discharged from her employment for work related deficiencies." Plaintiff's response, p. 2.*

reinstatement.

The defendants assert various arguments in support of their motion, which do not merit detailed discussion. The plaintiff cannot recover money damages under § 1983 from the University or the individual defendants, sued only in their official capacities, as they are not "persons" subject to suit.[6] Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); McLaughlin v. Bd. of Trustees, 215 F.3d 1168, 1172 (10th Cir. 2000). The individual defendants also may not be sued under Title VII[7] or the GTCA,[8] *see* 51 Okla. Stat. §163(C); Nail v. City of Henryetta, 911 P.2d 914, 916 (Okla. 1996), but they may be sued for prospective injunctive relief in their official capacities under § 1983.[9] Meiners v. University of Kansas, 359 F.3d 1222, 1232-33 (10th Cir. 2004). The plaintiff's public policy

---

[6]*The plaintiff erroneously contends the University and official-capacity defendants can be sued for money damages under § 1983 because they waived their sovereign immunity by removing the action to federal court. Eleventh Amendment immunity from suit and status as a "person" within the meaning of § 1983, while related concepts, are doctrinally distinct.*

[7]*Although not argued by the defendants, as they attack the merits of the plaintiff's Title VII claim, the individual defendants cannot be held liable under Title VII, which covers employers, not individual employees. Haynes v. Williams, 88 F.3d 898, 899-01 (10th Cir. 1996).*

[8]*The plaintiff does not dispute the individual defendants' immunity from suit under the GTCA. The Act relieves a government employee from liability for tortious conduct that occurs within the scope of his or her employment. Nail v. City of Henryetta, 911 P.2d 914, 916-18 (Okla. 1996) (mere negligence is not enough to displace a government employee's statutory immunity under the GTCA).*

[9]*These defendants acknowledge they may be sued in their official capacities under § 1983 for injunctive relief.*

or Burk tort[10] fails because she has adequate federal statutory remedies under Title VII and § 1983 for her alleged wrongful discharge. *See* Clinton v. State ex rel. Logan County Election Bd.,29 P.3d 543, 545-46 (Okla. 2001) (discussing prior decisions of List v. Anchor Paint Mfg. Co., 910 P.2d 1011(Okla. 1996) and Marshall v. OK Rental & Leasing, Inc., 939 P.2d 1116, (Okla. 1997) in which the court held a Burk tort was not available because the plaintiffs had adequate federal statutory remedies under the ADEA and Title VII). This leaves for resolution the plaintiff's § 1983 race discrimination claims against defendant Weatherby for monetary relief, her claims against all the individual defendants for injunctive relief, and her Title VII race discrimination and intentional infliction of emotional distress claims against the University.[11]

The McDonnell Douglas[12] analytical framework guides the court's review of the plaintiff's race discrimination claim.[13] As the defendants assumed, for purposes of their

---

[10]*The Oklahoma Supreme Court created an exception to its general rule of at-will employment in Burk v. K-Mart Corp., 770 P.2d 24 (1989), recognizing a cause of action for wrongful discharge in violation of public policy. Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 545 (Okla. 2001). The claim is now referred to as a "Burk tort." Wilburn Mid-South Health Dev., Inc.,343 F.3d 1274, 1277 n.2 (10th Cir. 2003).*

[11]*Because another basis exists for resolving the plaintiff's GTCA claim, the court finds it unnecessary to decide whether, as the defendants argue, she failed to comply with the Act's notice provisions.*

[12]McDonnell Douglas Corp. v. Green, *411 U.S. 792, 802-04 (1973).*

[13]*"The McDonnell Douglas burden-shifting analysis is appropriate in ... discrimination cases such as the present one, in which the plaintiff has no direct evidence of discrimination and the employer disclaims reliance on the plaintiff's [race] for an employment decision." Morgan v. Hilti, Inc., 108 F.3d 1319,1323 n.3 (10th Cir. 1997). "[I]n racial discrimination suits, the elements of a plaintiff's case are the same, based on the*

motion, that the plaintiff has established a prima facie case[14] and the defendants have offered a legitimate, nondiscriminatory reason for the decision to discharge her, the burden shifts back to the plaintiff to show there is a genuine issue of material fact as to whether the defendants' explanation was pretextual or unworthy of belief.[15] Green v. New Mexico, 420 F.3d 1189, 1192 (10th Cir. 2005). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[16]  Morgan v. Hilti, Inc.,108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation omitted).  "[G]laring contradictions between the plaintiff's evaluations and the employer's proffered reason for taking the adverse action," Green, 420 F.3d at 1193 (internal quotation omitted), or "memoranda from supervisors praising the plaintiff on an

---

*disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII." Drake v. City of Fort Collins,927 F.2d 1156, 1162 (10th Cir.1991).*

[14]*A prima facie case requires a showing that (1) the plaintiff belongs to a protected class; (2) was qualified for her job; and (3) despite her qualifications, was discharged. Green v. New Mexico, 420 F.3d 1189, 1192 n.3 (10th Cir. 2005).*

[15]*"[A] challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Green, 420 F.3d at 1191 n.2.*

[16]*Pretext  also may be shown by "prior treatment of [the] plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." Simms, 165 F.3d at1328.*

issue later claimed to be the reason for the adverse action," *id.*, may also be evidence of pretext.

After careful review of the submissions of the parties, the court concludes the plaintiff has not produced evidence sufficient to create a factual dispute as to pretext. There is no evidence demonstrating that race played a factor in her discharge. She does not deny that there were problems with her performance, claiming instead that she was inadequately trained. However, the deposition testimony she cites does not substantiate that assertion.[17] She also complains of dissimilar treatment -- stating she was repeatedly left out of meetings, was spied on and, unlike other employees, was not allowed to meet with her supervisor on a regular basis. Yet the affidavit the plaintiff references in support of this alleged disparate treatment is not attached to her response.[18] It also is not attached to her June 6, 2006, surreply [Doc. #51], despite the court's notation of the omission in its May 30, 2006 Order.[19]

Contrary to the plaintiff's assertion, discrimination cannot be inferred solely from the fact that she "was the only African American on staff at the time." Plaintiff's response, p. 7. "[S]imply being the lone member of an identifiable racial or ethnic minority within a supervisor's chain of command, without more, does not demonstrate racial animus." Chavez

---

[17]*Weatherby deposition, pp. 36-37, 46-48.*

[18]*The plaintiff made the conclusory statement during her deposition that she was "[t]reated different to the other counterparts in the office," defendants' reply, Exhibit 1, p. 125, but does not explain how she was treated differently or identify the coworkers.*

[19]*As the evidentiary submissions of the plaintiff and defendants were deficient, the court advised the parties that if they expected their evidence to be considered, they needed to correct the errors by June 5, 2006.*

v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005). Similarly, the absence of any negative evaluations of the plaintiff until immediately prior to her discharge does not support an inference of discrimination. *See* Green v. Yates, 172 F.3d 878, 1999 WL 76845, at *2 (10th Cir. Feb. 18, 1999) ("[T]he existence of positive as well as negative employment evaluations is not, by itself, sufficient evidence from which to infer racial animus. Something more is required").[20] There are no "glaring contradictions" or inconsistencies in the plaintiff's evaluations that might raise a disputed issue of fact as to whether the defendants' proffered reasons for the plaintiff's discharge are unworthy of credence. *Cf.* Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1218-19 (10th Cir. 2002).

Similarly unpersuasive is the plaintiff's reliance on the temporal relationship between the reprimands and the end of her probationary period.[21] Although described by the plaintiff as a "provocative piece of evidence," the timing falls short of supporting an inference of discrimination. All parties appear to concede that a new hire to a position such as the plaintiff held would require several months to learn the job. Given that, formal adverse critiques of an employee's poor performance would reasonably be expected to occur toward the end of the one year probationary period. *See* Green, 420 F.3d at 1196 (court rejected argument that employee's termination within days of the expiration of her probationary

---

[20]*Green is an unpublished decision cited for persuasive value only under 10th Cir. R. 36.3(B).*

[21]*Temporal proximity between protected conduct and adverse action is often relied on to establish the causal connection element of a prima facie case of retaliation. See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252-53 (10th Cir. 2001).*

period of employment, after which discharge could only occur after the employee was accorded due process, did not indicate that employer's proffered reasons for firing her were prextextual).

Finally, to the extent the plaintiff is contending that discriminatory intent can be inferred from the defendants' failure either to advise her that her job performance was inadequate until immediately before she was terminated or to give her six months to correct the problems, her argument fails. While there may be other or better ways to correct inadequate performance, in the absence of evidence that the plaintiff was treated differently from other similarly situated employees or that the reasons given for her discharge were false, it does not suggest pretext. *See* Simms, 165 F.3d at 1330 (The court's "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments.").

As the plaintiff has failed to present sufficient evidence from which a reasonable fact-finder could conclude that the defendants discriminated against her because of her race, the defendants are entitled to summary judgment on her Title VII and § 1983 claims. Further, the University is entitled to summary judgment on the plaintiff's intentional infliction of emotional distress claim as it is based on her alleged discriminatory discharge.

Accordingly, the defendants' motion [Doc. # 36] is **GRANTED** and judgment will be entered in favor of the defendants and against the plaintiff on all claims.

**IT IS SO ORDERED**.

Dated this 20th day of June, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE